## McCardle *v.* Holcomb.

[No. 27,242.   Filed November 20, 1939.   Rehearing denied December 22, 1939.]

*John E. Osborn, E. E. Hite,* and *William B. Porter,* for appellant.

*Turner & Woodfill,* for appellee.

FANSLER, C. J.—This is an appeal from a judgment in an election contest. The appellant and appellee were candidates for Mayor of the City of Greensburg in the 1938 election. The canvassing board certified the appellee as elected by fourteen votes. A recount commission reduced the number of votes for each candidate; but found that the appellee had been elected by twenty-seven votes. The case was tried upon the appellant's complaint to contest. The trial court found that each of the parties had received the same number of legal votes, and there was judgment for the contestee.

The appellant has assigned error and the appellee cross-error upon the rulings of the court admitting and rejecting certain ballots.

The first question presented involves five absent voters' ballots. The ballots bear the seal of the clerk and the signature "D. D. Morgan," without any designation as to who "D. D. Morgan" may be. It is conceded, however, that "D. D. Morgan" was the clerk of the circuit court, and that the signature upon the ballots was his signature, and we think there can be no doubt that the court could take judicial notice of the fact that "D. D. Morgan" was its clerk. The objection is that the word "clerk," or other official designation, did not accompany the signature. The statute, section 29-2606 Burns' 1939 Pocket Supp. (Acts 1935, ch. 316, § 6, p. 1511), provides: "Before mailing or delivering any ballot the

clerk shall affix his official seal and place his signature near the lower left-hand corner on the back thereof leaving sufficient space on the margin of such ballot for the initials of the poll-clerks." It is noted that the word "official" precedes the word "seal," and if the word "official" had also preceded the word "signature," there would be basis for construing it as meaning that there must be some designation of the official character of the person signing. The purpose of this provision of the statute is to safeguard and identify ballots which are sent out for absent voters' use. It cannot be doubted that a ballot signed by the clerk with his own personal signature, and bearing the official seal of his office, is sufficiently authenticated to provide the protection desired, and it is not contended here that by any possibility the ballots used and voted were not the ballots furnished by the clerk, or that, by the omission of an official designation of title after his name, it was possible that any other or different or unofficial ballots might have been substituted. The appellant relies upon the case of *Reach* v. *Quinn* (1909), 159 Ala. 340, 343, 48 So. 540. The action was for malicious prosecution. The warrant in the criminal prosecution was excluded from the evidence. The statute quoted in the opinion provides: "The warrant must be signed by the magistrate, with his name and initials of office, or the same must in some way appear from the warrant." The court said: "The statute in the latter clause of the foregoing extract seems to emphasize the requirement as to the signature of the officer and the initials of his office appearing on the warrant in order to give it validity." We have no requirement in the statute before us that the initials of the officer or some designation of his official title shall appear. The opinion goes on to say that, while it may be that courts will judicially note

who are justices of the peace, they cannot judicially note that there is but one person of the name signed to the warrant. But in the case at bar the officer involved is the officer of the court in which the case is tried. The fact that it is the true signature of the officer is not questioned. In the Alabama case a positive and express requirement of the statute was omitted in a criminal proceeding in which strict conformity to statutory provisions is required for the protection of those who may be charged criminally. In the case before us the purpose of the statute, as we have said, is to preserve the purity of the ballot. There is no express provision that the signature be accompanied by an official designation, although the word "official" is used in connection with the requirement for the use of the seal. If the absent voters who received the ballots had taken the precaution to examine the statute to see whether the ballots were legal, it cannot be said that they would have been justified in rejecting them and demanding others. To reject these ballots after they have been voted would be to disfranchise the voters who used them, upon the ground that, while the letter of the statute was followed in authenticating them, the words, "his signature," as used in the statute, required something more than is ordinarily implied in common parlance by the use of that expression. There is no suggestion that the ballots were illegally obtained by the voters, or that their use impaired the honesty or secrecy of the election or violated the spirit of the election laws. Under such circumstances, the mere irregularity, if it was an irregularity, of an election officer will not be permitted to disfranchise the voter.

The appellant questions the correctness of the rulings of the court in rejecting a number of ballots tendered by him, and in admitting a number of ballots introduced

by the appellee. No good purpose would be served by going into the rules which govern the marking of ballots. They have been repeatedly and exhaustively discussed in the decisions of this court. We have carefully examined all of the ballots in the record. Under the most liberal construction, only three of the appellant's ballots rejected by the trial court might be counted, and, by the same liberal construction, no illegal ballots were counted for the appellee, and at least four ballots offered by the appellee and rejected should have been counted. It is most difficult to describe with exactitude the pencil markings that give rise to difficulty and debate and which closely approach the borderline which distinguishes legal from illegal ballots. It is clear, however, that the trial judge was consistent in his rulings, and it cannot be said that there was error prejudicial to the appellant.

Upon the only other question presented, the court ruled with the appellant. If this ruling were held to be error, it would increase the appellee's majority an additional two votes, so there is no necessity for considering it.

Judgment affirmed.

Tremain, J., not participating.